UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06-20032 |
| ) | |
| BRAD O. WILLIAMS, ) | |
| SEVILLE WILLIAMS, ) | |
| CLINTON WILLIAMS, ) | |
| TYRON THOMAS, ) | |
| RORY TUCKER, ) | |
| MARION JEFFERSON, II, ) | |
| BOBBY L. RILEY, ) | |
| and AHSHUN T. COLLINS, ) | |
| ) | |
| Defendants. ) | |

**GOVERNMENT'S CONSOLIDATED RESPONSE TO
DEFENDANTS' PRE-TRIAL MOTIONS**

The United States of America, by its attorneys, Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Timothy A. Bass, Assistant United States Attorney, respectfully submits its consolidated response to the defendants' pre-trial motions. The government states as follows:

**FACTS**

1. The defendants are charged in an indictment as follows:

**Brad Williams**:

Conspiracy to Commit Armed Robbery and Armed Bank Robbery (Count 1)

Armed Robbery (Counts 2 and 6)

Armed Bank Robbery (Counts 4 and 8)

Carrying and Using a Firearm During a Crime of Violence (Counts 3, 5, 7 and 9)

Felon in Possession of a Firearm (Count 10)

**Seville Williams**:

Conspiracy to Commit Armed Robbery and Armed Bank Robbery (Count 1)

Armed Robbery (Count 2)

Carrying and Using a Firearm During a Crime of Violence (Counts 3 and 5)

Armed Bank Robbery (Count 4)

**Clinton Williams:**

Conspiracy to Commit Armed Robbery and Armed Bank Robbery (Count 1)

Armed Bank Robbery (Counts 4 and 8)

Carrying and Using a Firearm During a Crime of Violence (Counts 5 and 9)

**Tyron Thomas**:

Conspiracy to Commit Armed Robbery and Armed Bank Robbery (Count 1)

Armed Robbery (Count 6)

Armed Bank Robbery (Count 8)

Carrying and Using a Firearm During a Crime of Violence (Counts 7 and 9)

Felon in Possession of a Firearm (Count 10)

**Rory Tucker**:

Conspiracy to Commit Armed Robbery and Armed Bank Robbery (Count 1)

Armed Bank Robbery (Count 8)

Carrying and Using a Firearm During a Crime of Violence (Count 9)

**Marion Jefferson, III**:

Conspiracy to Commit Armed Robbery and Armed Bank Robbery (Count 1)

Armed Robbery (Count 6)

Armed Bank Robbery (Count 8)

Carrying and Using a Firearm During a Crime of Violence (Counts 7 and 9)

**Bobby L. Riley**:

Conspiracy to Commit Armed Robbery and Armed Bank Robbery (Count 1)

Armed Bank Robbery (Count 8)

Carrying and Using a Firearm During a Crime of Violence (Count 9)

**Ahshun T. Collins**:

Conspiracy to Commit Armed Robbery and Armed Bank Robbery (Count 1)

Armed Bank Robbery (Count 8)

Carrying and Using a Firearm During a Crime of Violence (Count 9)

       Felon in Possession of a Firearm (Count 10)

2. The government's evidence at trial will include the following:

3. From in or about November 2005, and continuing to on or about April 24, 2006, the defendants Brad O. Williams, Seville Williams, Clinton Williams, Tyron Thomas, Rory Tucker, Marion Jefferson, III, Bobby L. Riley and Ahshun T. Collins conspired with each other and with others to commit the following offenses against the United States:

    a. To, by force and violence, and by intimidation, take and attempt to take, from the person and presence of another, property and money belonging to, and in the care, custody, control, management, and possession of a federally-insured financial institution, in violation of Title 18, United States Code, Sections 2113(a) and (d); and

    b. To unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce by committing the offense of robbery, in violation of Title 18, United States Code, Section 1951; and

    c. To carry and use a firearm during and in relation to and to possess a firearm in furtherance of a crime of violence, namely, armed bank robbery and robbery, in violation of Title 18, United States Code, Section 924©).

4. It was the object of the conspiracy for the defendants to commit various armed robberies of financial institutions and businesses in Kankakee, Peotone, and Rantoul, Illinois. In so doing, the defendants used force, violence and intimidation against, and threatened, assaulted and put in jeopardy the lives of, financial institution and business employees by means of possessing, carrying and using multiple firearms.

During the period of the conspiracy, two or more of the defendants committed a total of at least five armed robberies, during which more than $400,000 was stolen by force and violence.

5. The government anticipates that defendants Bobby L. Riley, Tyron Thomas, Marion Jefferson, III, and Ahshun T. Collins will plead guilty to all counts charged in the indictment. The government further anticipates that defendants Brad O. Williams, Clinton Williams, Seville Williams and Rory Tucker will proceed to trial. Finally, the government anticipates that defendants Bobby L. Riley, Tyron Thomas, Marion Jefferson, III, and Ahshun T. Collins will testify as government witnesses at trial and establish the existence of the conspiracy and the involvement of all eight defendants as members of the conspiracy.

**Walgreen's Robbery**

6. As part of the conspiracy, on or about January 3, 2006, defendants Brad O. Williams and Seville Williams and other co-conspirators committed the armed robbery of Walgreen's, Kankakee, Illinois. To accomplish the armed robbery, the defendants and their co-conspirators caused a fictitious 911 call to be made to Kankakee authorities concerning a home invasion on the opposite side of town from Walgreen's. The conspirators, two of whom were armed with handguns, then entered Walgreen's, and demanded money. As a result of the armed robbery, the defendants and their co-conspirators stole approximately $2,700.

**Commonwealth Credit Union Robbery**

7. As a part of the conspiracy, on or about January 11, 2006, defendants Brad O. Williams, Seville Williams, and Clinton Williams committed the armed bank robbery of the Commonwealth Credit Union, Kankakee, Illinois. To accomplish the armed bank robbery, defendants Brad O. Williams and Seville Williams, armed with handguns, entered the credit union, threatened employees with the handguns, and demanded money. As a result of the armed robbery, the defendants and their co-conspirators stole approximately $313,000. Defendant Clinton Williams, the getaway driver, then successfully drove his co-conspirators away from the credit union.

**Heights Finance Robbery**

8. As a part of the conspiracy, on or about March 28, 2006, defendants Brad O. Williams, Tyron Thomas and Marion Jefferson, III committed the armed robbery of Heights Finance, Kankakee, Illinois. To accomplish the armed robbery, defendant Brad O. Williams acted as a lookout, while defendants Thomas and Jefferson, one of whom was armed with a handgun, entered the store, threatened the employees with the handgun and demanded money. One of the defendants then struck an employee in the head with the gun, causing the gun to discharge. As a result of the armed robbery, the defendants stole approximately $200.

**First Community Bank and Trust Robbery**

9. As a part of the conspiracy, on or about April 7, 2006, defendants Brad O. Williams, Tyron Thomas and Clinton Williams and at least one other co-conspirator

committed the armed robbery of the First Community Bank and Trust, Peotone, Illinois. To accomplish the armed robbery, two of the co-conspirators, both armed with handguns, entered the bank, threatened the employees with the handguns, and demanded money. As a result of the armed robbery, the defendants stole approximately $100,000.

**Community Plus Federal Credit Union, Rantoul, Illinois**

10.     As a part of the conspiracy, on or about April 24, 2006, defendants Brad O. Williams, Clinton Williams, Tyron Thomas, Rory Tucker, Marion Jefferson, III, Bobby L. Riley and Ahshun T. Collins committed the armed robbery of Community Plus Federal Credit Union, Rantoul, Illinois. To accomplish the armed robbery, defendants Clinton Williams, Rory Tucker and Bobby L. Riley acted as getaway drivers and lookouts, while defendants Brad O. Williams, Tyron Thomas, Marion Jefferson, III, and Ahshun T. Collins, at least three of whom were armed with handguns, entered the credit union, threatened the employees with the handguns and demanded money. Two of the defendants struck two credit union employees in the head with handguns. As a result of the armed robbery, the defendants stole approximately $3,600.

## ARGUMENT

**Co-Conspirator Statements**

11.     Defendants Seville Williams and Rory Tucker have both filed motions for a pre-trial hearing on the admissibility of co-conspirator statements. Only defendant Williams has filed any reference to supporting authority to support his motion.

12. "Under Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay if it is offered against a party, is a statement of a coconspirator of the party and was made in furtherance of the conspiracy. In order to comply with this rule, the government must demonstrate by a preponderance of the evidence that the conspiracy existed, that the defendant and the declarant were members of the conspiracy, and that the statements sought to be admitted were made in furtherance of the conspiracy." United States v. Williams, 44 F.3d 614, 617 (7th Cir. 1995); see United States v. Schumpert, 958 F.2d 770, 773 (7th Cir. 1992); United States v. Santiago, 582 F.2d 1128, 1134 (7th Cir. 1978). In making this determination, the court may "examine the hearsay statements sought to be admitted." Bourjaily v. United States, 483 U.S. 171, 181 (1987).  Although a party against whom a co-conspirator statement is admitted must be a member of the conspiracy, the fact that such party was not a member of the conspiracy at the time the statement is made "is irrelevant." United States v. Sophie, 900 F.2d 1064, 1074 (7th Cir. 1990). "Under Rule 801(d)(2)(E), a conspirator's statement is admissible against conspirators who join the conspiracy after the statement is made." Id. Moreover, "statements that further the objectives of a conspiracy can take many forms, including statements made to recruit potential coconspirators, . . . statements seeking to control damage to an ongoing conspiracy, . . . statements made to keep coconspirators advised as to the progress of the conspiracy, . . . and statements made in an attempt to conceal the criminal objectives of the conspiracy," but do not include idle chatter or casual conversation. Garlington v. O'Leary, 879 F.2d 277, 283 (7th Cir. 1989).

13.    In this case, the government has no objection to the request of defendants Seville Williams and Tucker for a pre-trial hearing to determine the admissibility of co-conspirator statements. At the hearing, the government will establish that the members of the
conspiracy included all eight defendants, as charged in the indictment. The government will further establish that the following types of statements by one or more of the defendants were made in furtherance of the conspiracy:

- Any statements concerning the formation and recruitment of members of the conspiracy;

- Any statements concerning the planning of any of the robberies charged in the indictment;

- Any statements concerning the acquisition of firearms;

- Any statements made to during the commission of the robberies that furthered the object of the conspiracy;

- Any statements made to conceal the existence of the conspiracy.

Although one or more of the defendants may not have been a member of the conspiracy at the time one or more of such statements were made, that fact "is irrelevant" provided that the government establishes that each defendant "join[ed] the conspiracy after the statement [wa]s made." Sophie, 900 F.2d at 1074. "Under Rule 801(d)(2)(E), a conspirator's statement is admissible against conspirators who join the conspiracy after the statement is made." Id.

14.     All of such statements by any of the defendants will also qualify as admissions of a party opponent under Rule 801(d)(2)(A) against the particular defendant who made the statement.

**Motion for Disclosure of "Other Acts" Evidence**

15.     Defendant Tucker has further filed a motion for notice of the government's intention to present evidence of "other acts" of the defendant pursuant to Rules 404(b) and 608(b) of the Federal Rules of Evidence.

16.     As to the request under Rule 608(b), that rule provides that specific instances of conduct of a witness may, in the discretion of the court and if probative of untruthfulness, be inquired into on cross-examination. Fed. R. Evid. 608(b). Rule 608(b) plainly does not, however, require the government to provide advance notice to the defendant of its intended cross-examination. Nor does the defendant provide any authority in support of his request. Accordingly, that part of the defendant's motion should be denied.

17.     As to the defendant's request under Rule 404(b), that rule does require the government to provide, upon request, "reasonable notice" of the "general nature" of evidence to be presented.

18.     In this case, unless the defendant opens the door, the government does not intend to present any evidence under Rule 404(b) against the defendant in the government's case-in-chief. However, should the defendant testify or present evidence in his own case and assert a lack of knowledge of the offenses or a defense of mistake,

the government may seek permission from the Court to cross-examine the defendant about or present rebuttal evidence of the defendant's involvement in an armed robbery of the Hilton Garden Inn in Kankakee, Illinois on November 18, 2005, less than one year prior to the date of the charged offenses. Discovery materials concerning this robbery have been made available to the defendant. Should the government decide to seek the Court's approval to present such evidence, it will make such a request to the Court outside the presence of the jury. Accordingly, the remaining part of the defendant's motion should be denied as moot.

**Motion for Severance**

19.     Defendant Tucker has filed a motion to sever his trial from that of all the other defendants pursuant to Rule 14 of the Federal Rules of Criminal Procedure. Again, the defendant provides no authority in support of his motion. In any event, as the sole basis for this motion, the defendant claims he is entitled to a separate trial because 1) he "anticipates" the government will seek to admit evidence against his co-defendants which is not admissible as to him, and 2) the evidence against him is "de minimis when compared to the evidence against co-defendants . . . ." Neither of these claims entitles the defendant to a separate trial.

20.     Rule 14 provides that if "a defendant . . . is prejudiced by a joinder of . . . defendants . . . for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Fed.R.Crim.P. 14.  The rule recognizes that joinder, even when proper under

Fed.R.Crim.P. 8(b), as it clearly is in this case, may prejudice a defendant.[1] However, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). It is the defendant's burden to identify and establish this risk. See United States v. Mohammad, 53 F.3d 1426, 1431 (7th Cir. 1995).

21. In this case, Defendant Tucker has failed to carry his burden. His concerns about inadmissible evidence are not warranted because the government does not intend to present evidence at trial that is inadmissible against him or any other defendant. Moreover, the defendant's claim concerning the "de minimis" evidence is also without merit because the evidence against the defendant is strong, if not overwhelming. At any rate, it is well settled that a defendant is not entitled to a severance merely because he might have a better chance of acquittal in a separate trial. Zafiro, 506 U.S. at 540. Similarly, disproportionality of the evidence is also not a ground in itself for severance. United States v. Hendrix, 752 F.2d 1226, 232 (7th Cir. 1985).

22. Finally, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro, 506 U.S. at 537 (internal

---

[1] Defendant Tucker does not claim that he is improperly joined for trial.

quotations and citations omitted). The defendant has offered nothing to overcome this preference, and his motion should therefore be denied.

**Motion for Bill of Particulars**

23.     Defendant Tucker has further filed a motion for bill of particulars. Again, he offers no supporting authority. Moreover, the defendant is merely seeking evidentiary details of the government's case. His motion is therefore inappropriate.

24.     The law in the Seventh Circuit governing the standard for granting a motion for bill of particulars is well established. "The test for whether a bill of particulars is necessary is whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." United States v. Kendall, 665 F.2d 126, 134 (7th Cir. 1981) (emphasis in original) (quotation omitted). It is not to be used as a discovery tool. Just as a defendant is not entitled to know the details of the evidence the government will seek to introduce, he is also not "entitled to know for what purpose the government will seek to have it admitted." Id. "Accordingly, a bill of particulars is necessary only where the indictment does not sufficiently apprise the defendant of the charges to enable h[im] to prepare for trial." United States v. Esteves, 886 F. Supp. 645, 646 (N.D. Ill. 1995) (citing United States v. Canino, 949 F.2d 928, 949 (7th Cir. 1991)).

25.     "In deciding whether a bill of particulars is appropriate, the court may consider the complexity of the charges, the clarity of the indictment, and the degree of discovery available to the defense absent a bill." Id. A defendant is not entitled to

statements of witnesses, see 18 U.S.C. §3500, the identity of unindicted co-conspirators, see, e.g., Rogers v. United States, 340 U.S. 367, 375 (1951) ("at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown"); United States v. Kramer, 711 F.2d 789, 796 (7th Cir.) ("no requirement that a conspiracy indictment identify uncharged co-conspirators"); Esteves, 886 F.Supp. at 646, or a list of the government's witnesses, United States v. Johnson, 504 F.2d 622, 628 (7th Cir. 1974) ("A bill of particulars cannot be used 'to obtain a list of the government's witnesses . . . or evidentiary detail"); United States v. Cansler, 419 F.2d 952, 954 (7th Cir. 1969) ("purpose of the bill is to adequately inform a defendant as to the indictment against him and is not to supply the defendant with a list of the government's witnesses"), or the evidentiary details of the government's case or its purpose for the admission of evidence. Kendall, 665 F.2d at 135.

26.   In short, as the Seventh Circuit has repeatedly stated, "the defendant's constitutional right is to know the offense with which he is charged, not the details of how it will be proved." Id.; United States v. Richardson, 130 F.3d 765, 776 (7th Cir. 1997) (defendant "is only entitled to know the offense with which he is charged, not all the details of how it will be proved").

27.     In this case, the defendant is charged with conspiracy to commit armed robbery, armed robbery, and carrying a firearm during and in relation to crime of violence. These offenses are not complex, and all offenses are alleged to have occurred on or about a specific date or within a specified time period. Thus, the indictment more than adequately informs the defendant of the offense charged, the time frame in which the offenses took place, and citation to the relevant statutes. Moreover, "[t]he entire record in this proceeding is admissible in any subsequent criminal proceeding to prove that [the] defendant has already been prosecuted for the same offense." Kramer, 711 F.2d at 796.

28.     The defendant does not complain that the indictment does not meet these criteria, but rather requests evidentiary details of the government's case. That type of information, however, is not appropriate for a bill of particulars.

29.     Finally, when considering whether a bill of particulars is required, "it is proper to look to post-indictment discovery." United States v. Glecier, 923 F.2d 496, 502 (7th Cir. 1990). A bill of particulars is not required "when information necessary for a defendant's defense can be obtained through some other satisfactory form." Canino, 949 F.2d at 949 (quotation omitted).

30.     In this case, as reflected in the defendant's own motion, the defendant has been provided with extensive discovery. Accordingly, a bill of particulars is simply not required.

**Motion for Production of Favorable Evidence**

      31.      Defendant Tucker has further filed a motion for disclosure of favorable evidence.

      32.      Under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), "the government must disclose evidence favorable to the defendant that, if suppressed, would deprive the accused of a fair trial." <u>United States v. Beverly</u>, 913 F.2d 337, 349 (7th Cir. 1990) (citing <u>Brady</u>). "This duty extends to exculpatory evidence and to evidence that might be used to impeach the government's witnesses." <u>Id.</u> However, "<u>Brady</u> does not grant criminal defendants unfettered access to government files." <u>United States v. Phillips</u>, 854 F.2d 273, 277 (7th Cir. 1988). Indeed, "a <u>Brady</u> request does not entitle a criminal defendant to embark upon an unwarranted fishing expedition through government files, nor does it mandate that a trial judge conduct an in camera inspection of the government's files in every case." <u>United States v. Mitchell</u>, 178 F.3d 904, 908-09 (7th Cir. 1999). "A due process standard which is satisfied by mere speculation would convert <u>Brady</u> into a discovery device and impose an undue burden upon the district court." <u>United States v. Navarro</u>, 737 F.2d 625, 631 (7th Cir. 1984). Thus, a defendant is not entitled to review all of the government's files in search of exculpatory material. Rather, "counsel must be satisfied with the representations of the prosecutor, fortified by judicial inspection in close cases." <u>United States v. Danovaro</u>, 877 F.2d 583, 589 (7th Cir. 1989). Moreover, the Seventh Circuit has repeatedly "held that a defendant is not entitled to discovery material under <u>Brady</u> without even a hint that impeaching material [i]s contained

therein . . . or where the defendant has made no showing at all by affidavits or otherwise that any evidence [i]s suppressed by the government." United States v. Morris, 957 F.2d 1391, 1402-03 (7th Cir. 1992) (quotation omitted).

33.     In addition, "there is nothing in Brady or [United States v. Agurs, 427 U.S. 97 (1976),] to require that such disclosures be made before trial . . ." United States v. Allain, 671 F.2d 248, 255 (7th Cir. 1982) (quotation omitted). Rather, "the standard to be applied in determining whether delay in disclosure violates due process is whether the delay prevented defendant from receiving a fair trial." Id. at 254-55. "As long as ultimate disclosure is made before it is too late for the defendant[] to make use of any benefits of the evidence, Due Process is satisfied." United States v. Ziperstein, 601 F.2d 281, 291 (7th Cir. 1979). Where the government has represented that it has complied with its Brady obligations, a defendant's motion for such material may be denied as moot. See, e.g., United States v. Alex, 791 F.Supp. 723, 729 (N.D. Ill. 1992) (government's promise to comply with Brady rendered defendant's motion moot); United States v. Dominquez, 131 F.R.D. 556, 559 (N.D. Ill. 1990).

34.     In this case, the government is fully aware of it s Brady obligations and intends to comply with them. Accordingly, the defendant's motion should be denied as moot.

**Motion for List of Witnesses**

      35.    Defendant Tucker has further filed a motion for a list of witnesses. This Court, however, has a standing order for all cases, which requires reciprocal disclosure of a list of witnesses by all parties at the final pretrial conference. The final pretrial conference in this case is scheduled for October 19, 2006. Moreover, as previously noted, the government has previously made extensive discovery materials available to all defendants, which includes the names of most, if not all, of the potential government witnesses. Accordingly, the defendant's motion should be denied.

                                                 Respectfully submitted,

                                                 RODGER A. HEATON
                                                 UNITED STATES ATTORNEY

BY:    s/Timothy A. Bass
          TIMOTHY A. BASS, Bar No. MO 45344
          Assistant United States Attorney
          201 S. Vine St., Suite 226
          Urbana, IL 61802
          Phone:  217/373-5875
          Fax: 217/373-5891
          tim.bass@usdoj.gov

CERTIFICATE OF SERVICE

     I hereby certify that on the 6th day of October 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

     All counsel of record

                              s/Timothy A. Bass
                              TIMOTHY A. BASS, Bar No. MO 45344
                              Assistant United States Attorney
                              201 S. Vine Street, Suite 226
                              Urbana, Illinois 61802
                              Phone: 217/373-5875
                              Fax: 217/373-5891
                              tim.bass@usdoj.gov